UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mark Armstrong,                                      Civil No.17-2264 (FLN)

      Plaintiff,

      v.                                                      **ORDER**

Nancy Berryhill,
Commissioner of Social Security,

      Defendant.
_____

Karl E. Osterhout and Edward C. Olson, for Plaintiff.
Pamela A. Marentette, for Defendant.
_____

      Plaintiff Mark Armstrong seeks judicial review of the final decision of the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA"), who denied his application for disability insurance benefits under Title II of the Social Security Act. This Court has jurisdiction over the claim pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), 28 U.S.C. § 636(c), and Rule 73 of the Federal Rules of Civil Procedure. The parties have submitted cross motions for summary judgment. *See* ECF Nos. 11 and 14. For the reasons set forth below, the Commissioner's motion for summary judgment is **GRANTED**, the Commissioner's decision is **AFFIRMED**, and the case is **DISMISSED WITH PREJUDICE**.

## I.     INTRODUCTION

      On April 16, 2014, Armstrong applied for disability insurance benefits ("DIB") under Title II of the Social Security Act, alleging a disability onset date of March 19, 2014. Administrative Record [hereinafter "AR"] 140, ECF No. 10. Armstrong's application was denied initially on September 19, 2014, and upon reconsideration on January 13, 2015. AR 65, 78.

Thereafter, Armstrong filed a written request for a hearing before Administrative Law Judge ("ALJ") Roger Thomas, which was held on February 23, 2016. AR 30. On March 10, 2016, the ALJ denied Armstrong's DIB application. AR 13–22, 28. On April 26, 2017, the SSA Appeals Council denied Armstrong's request for review, rendering the ALJ's decision final for purposes of judicial review. AR 1–3; *see* 20 C.F.R. § 404.981. On June 26, 2017, Armstrong commenced this action, seeking an award of benefits, or alternatively, remand for further proceedings pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). *See* ECF No. 1.

## II.   FACTUAL FINDINGS

### A. Background

Armstrong was fifty-seven years old on his alleged disability onset date. AR 140. Armstrong claims that the following medical conditions impair his ability to secure and maintain competitive employment: osteoarthritis, narrowing of the spine, bulging discs, pinched nerves, nerve damage in neck, carpal tunnel syndrome, shoulder pain, knee pain, tremors, tingling, and numbness in both hands. AR 199. Armstrong's past relevant work includes employment as a truck-part salesman, sterile processor at a hospital, and substitute custodian for a school district. AR 201. This work was semiskilled and its physical demands ranged from sedentary to medium. AR 273.

### B. Hearing Testimony

Armstrong testified on his own behalf at the February 23, 2016, administrative hearing. AR 30–56. Armstrong was represented by an attorney at the hearing, Natalie Ratzlaff. AR 30. Ratzlaff made no objection to the admission of exhibits into the record and was not aware of any other documents that needed to be added to the file. AR 31. Armstrong testified that he stopped working as a custodian because his hands would cramp after using a mop for an extended period,

2

and the work was complicated by his hand tremors. AR 45. Armstrong also testified that he can carry groceries, such as a gallon of milk, but cannot completely squeeze and grip. AR 46. Armstrong also testified that he suffers from poor concentration and that neck and back pain, specifically a pinched nerve, render extended sitting and standing painful. AR 48.

A neutral medical expert, Dr. Andrew Steiner, also testified regarding Armstrong's physical limitations. AR 49. He testified that Armstrong's neck, shoulder, and knee conditions did not meet or medically equal the SSA listings, and that Armstrong's "bilateral carpal tunnel condition is not associated with the kinds of strength loss or sensory loss that would get to a listings level or meet it [in] a neurologic category." AR 51. Steiner concluded that the record "describes somebody functioning at the light level as far as lifting and standing," with various other limitations. AR 51–52. In addition, a vocational expert ("VE"), Mitch Norman, testified that based on Armstrong's age, education, skills, and limitations, he could perform his past relevant work as a truck-part salesman and hospital sterilizer. AR 54.

### C. Medical Evidence

#### 1. Physical Impairments

On January 20, 2014, Armstrong's primary care physician, Kurt Partoll, M.D., treated him for bilateral hand numbness, hand weakness, and a finger infection. AR 281–82. Partoll referred Armstrong for image testing of his brain to determine the source of his hand numbness. *Id.* The image testing showed no definite cause of Armstrong's hand symptoms. AR 288–89. On August 12, 2014, A. Neil Johnson, M.D., noted Armstrong's history of neck pain, rotator cuff bilateral, left knee pain, sleep apnea, and carpal tunnel syndrome. AR 300. On November 11, 2014, and May 26, 2015, Paul Dickmann, M.D., of Twin Cities Orthopedics treated Armstrong for assorted physical pain. AR 311, 420. During those visits, Dickmann similarly noted

Armstrong's history of neck, knee, and shoulder pain, as well as pain from carpal tunnel syndrome. AR 311, 420. Dickmann treated Armstrong with steroid injections for left knee pain and noted that "using a lot of tools or providing a lot of force or repetitive motion of the hands may be difficult[,]" but that Armstrong "walked normally." AR 311. However, Dickmann opined that Armstrong's "gait looks stiff a little antalgic on the left." AR 422.

On March 19, 2014, Partoll completed a SSA general medical source statement. AR 385. Partoll stated that he began treating Armstrong in October of 2009. *Id.* Partoll opined that Armstrong would be capable of low stress jobs, limited to "sedentary work, lifting up to 10 lbs. occasionally, lifting and carrying small items, standing/walking no more than two hours in an eight-hour day." AR 386. In his opinion, Armstrong was capable of limited part-time work. *Id.* He also noted that Armstrong's symptoms could be expected to markedly impair his daily living activities. AR 387.

On September 9, 2017, Ann Fingar, M.D., a SSA consultative examiner, completed an SSA disability determination. AR 57. After noting Armstrong's medical history, Fingar found that very little evidence Armstrong's allegations regarding his limitations. AR 60. Specifically, Fingar opined that Armstrong's back disorders were severe, but that his affective and anxiety disorder was not severe, and that Armstrong failed to meet or equal listing 1.04, 12.04, or 12.06 criteria. AR 61. Fingar stated that Armstrong's allegation of depression and anxiety was "hidden" and that he has never been hospitalized for those alleged disorders. AR 60. Fingar found that Armstrong could occasionally lift 50 pounds, stand or sit six hours a day, and could adequately manipulate his knee. AR 63. Fingar opined that Armstrong was not disabled under SSA regulation. AR 66.

On January 12, 2015, Cliff Phibbs, M.D., a SSA consultative examiner, completed an SSA disability determination. AR 78. After noting Armstrong's medical history, Phibbs found that Armstrong's alleged symptom severity was only partially credible. AR 74. Like Fingar, Phibbs opined that although Armstrong's back disorder was severe, his affective and anxiety disorders were not. AR 72. Phibbs also noted that Armstrong had not been hospitalized for his alleged mental health disorders, and the medical evidence of record did not include any episodes of decompensation. AR 73. Phibbs found that Armstrong could occasionally lift 50 pounds, stand or sit six hours a day, could adequately manipulate his knee, and did not satisfy listing 1.04, 12.04, or 12.06 criteria. AR 73, AR 75.

On May 18, 2015, Xiaoming Dong, M.D., Armstrong's second treating physician, completed a SSA neuro/physical source statement. AR 379–84. Dong noted that he had been treating Armstrong since March 28, 2014. AR 379. Dong stated that Armonstrong's symptoms were severe enough to constantly interfere with his concentration, that he is incapable of even low stress jobs, and that his symptoms would interfere to the extent that he is "unable to maintain persistence and pace to engage in competitive employment." AR 381. He also opined that Armstrong's symptoms only amounted to a "slight" impairment of his daily living. AR 381. Finally, Dong concluded that Armstrong would need additional breaks, would miss work four or more work days per month, and would have various other physical limitations in a work setting, including lifting no more than 20 pounds occasionally. *Id.*

2. **Mental Impairments**

Beginning in mid-2014, through late 2014, Joseph Richmond, M.D., treated Armstrong for anxiety, adjustment disorder with mixed anxiety and depressed mood, episodic mood disorder, major depressive disorder, and insomnia. AR 333–56. On July 14, 2015, Richmond

5

completed an SSA mental medical source statement. AR 396–403. Richmond described Armstrong's symptoms as "interfer[ing] to the extent that the patient is unable to maintain persistence and pace to engage in competitive employment." AR 399. He noted that Armstrong's symptoms moderately impaired his daily living activities. AR 400. He estimated that Armstrong would miss four or more work days per month due to his psychologically based symptoms. AR 402.

Beginning on August 6, 2014, Lanny Law, D.MIN, LMFT, began providing regular treatment of Armstrong's depression, episodic mood disorder, anxiety, and adjustment disorder with anxiety and depression. AR 404. On July 20, 2015, Law completed an SSA mental medical source statement. AR 404–11. He described Armstrong's symptoms as "interfer[ing] to the extent that the patient is unable to maintain persistence and pace to engage in competitive employment," and further opined that "[t]he patient cannot work!" AR 407. Law also stated that Armstrong's symptoms markedly impaired his ability to perform daily living activities. AR 408.

### D. The Commissioner's Decision

On March 10, 2016, the ALJ issued a decision denying Armstrong's application for DIB benefits. AR 13–22. In determining that Armstrong was not disabled, the ALJ followed the five-step sequential process established by the SSA, outlined in 20 C.F.R. 404.1520(a) and 416.920(a).

The first step is to consider whether the claimant's work during the alleged disability period qualifies as substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant has performed substantial gainful activity, he is not disabled. *Id.* At step one, the ALJ found that, although Armstrong had worked during his alleged period of disability, he had not

engaged in substantial gainful activity because his compensation fell below substantial gainful activity levels. AR 15.

The second step is to determine whether the claimant has an impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416. 920(a)(4)(ii). At step two, the ALJ found that Armstrong suffered from the following severe impairments: obesity, neck pain, multi-level degenerative disk disease and moderate spinal stenosis, bilateral carpal tunnel syndrome, hand tremor, shoulder pain and status post bilateral rotator cuff surgery, left knee pain and a past history of surgery, cubital tunnel syndrome, and peripheral neuropathy. AR 15. The ALJ also determined, based partially on the opinions of Fingar and Phibbs, that Armstrong's mental health impairments were not severe. AR 16.

The third step is to determine whether the claimant has an impairment that meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; 416.920(d), 416.925, 416.926. At step three, the ALJ determined that Armstrong did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1. AR 17–18.

If the claimant's impairments fail to meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of the claimant's Residual Functional Capacity ("RFC"). Here, the ALJ concluded that Armstrong had the "[RFC] to perform light work as defined in 20 C.F.R. 404.1567(b) except no overhead tasks and no more than occasional power gripping . . . and no more than occasional postural motions such as kneeling, crawling, and crouching." AR 18. In making this [RFC] determination, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms;

7

however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely credible for the reasons explained . . . ." AR 19.

The fourth and fifth steps determine whether the claimant has the RFC to perform either past relevant work or any other job that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g). If the claimant can still perform past relevant work, then he is not disabled. *Id.* If the claimant cannot perform his past relevant work, then the "burden shifts to the Commissioner to prove, first, that the claimant retains the [RFC] to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

At step four, the ALJ concluded that "the claimant was capable of performing past relevant work in truck part-sales and as a [hospital] sterilizer [because] [t]his work did not require the performance of work-related activities precluded by the claimant's [RFC] . . . ." AR 21. The ALJ's determination was based in part on the VE's testimony, which the ALJ found consistent with the DOT. AR 22. Because the ALJ found that Armstrong was capable of performing his past relevant work, he made no finding at step five, and found that Armstrong was not disabled under the Social Security Act. *Id.*; *see also* 20 C.F.R. 404.1520(f).

### III.  STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "Disability" under the SSA means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled under the SSA "if his physical or mental impairment or impairments are of such severity that he is not only

unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §423(d)(2)(A).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* Therefore, this Court's review of the ALJ's factual

determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). The Court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## IV. ANALYSIS

First, Armstrong argues that the ALJ improperly rejected the opinion of his treating physicians. ECF No. 12 at 4. Specifically, Armstrong argues that the ALJ discounted Dong and Partoll's opinions that he could not work or was markedly limited without providing good reason. *See generally id.* Second, Armstrong argues that the ALJ's finding that he suffers from no more than minimal mental health limitations is contrary to law and not supported by substantial evidence in the record. *Id.* at 22. Armstrong argues that the opinions of his treating mental health providers, Richmond and Law, were discounted by the ALJ absent good reason for doing so, and without acknowledging their respective medical specializations of psychiatry and psychotherapy. *See generally id.* The Commissioner counters that the ALJ properly concluded that Armstrong was not disabled because substantial evidence in the record as a whole supports the ALJ's RFC determination and the weight given to the medical opinions of record. ECF No. 15. Because substantial evidence in the record as a whole supports the ALJ's decision denying Armstrong's application for DIB benefits, this Court affirms.

**A. Substantial Evidence Supports the Weight Given to Dong and Partoll's Opinions**

Treating physicians' opinions are entitled to controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are consistent with the other substantial evidence in the record as a whole. *See* 20 C.F.R. § 404.1527(c)(2); *Kelly v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). The rationale is that the treating physician is more

familiar with the claimant's medical condition than an examining or consulting doctor. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991). When an ALJ gives less than controlling weight to a treating physician's opinion, he must always give good reason for the particular weight given to a treating physician's evaluation. *See Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(2). When an ALJ discounts a treating physician's opinion, there must be "substantial evidence" in the record supporting the weight assigned. *See Pope v. Bowen*, 886 F.2d 1038, 1041 (8th Cir. 1989). If the ALJ determines that the claimant's treating physician's opinion is not controlling, he must evaluate the following factors to determine what weight to give the opinion: (1) length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the quantity of evidence in support of the opinion; (4) consistency of the opinion with the record as a whole; (5) whether the doctor is a specialist; (6) other factors brought to the ALJ's attention. *See* 20 C.F.R. § 404.1527(c)(2)–(6).

As to Dong, in his SSA medical source statement, he noted that Armstrong's symptoms are severe enough to regularly interfere with his concentration, that he is incapable of even low stress jobs, that he would miss four or more work days per month, and that his symptoms will interfere to the extent that he is "unable to maintain persistence and pace to engage in competitive employment." AR 381. The ALJ afforded Dong's opinion little weight because his findings regarding the severity of Armstrong's limitations were "not supported by the objective record." AR 21. In discounting Dong's opinion, the ALJ provided good reason. For example, the ALJ noted that Dong's own treatment notes from March through November 2014, contradicted his limitation findings and his consultative examination of Armstrong "reflects a largely normal physical exam with some limited range of motion, but mostly full range of motion . . . with no

pain in his neck." *Id.* Indeed, Dong's treatment notes state that Armstrong was oriented, cooperative, and possessed normal memory and insight. AR 672, 681, 692. Dong's treatment notes also show that he noted on several occasions that Armstrong had normal coordination, finger movements, ambulation, and muscle strength, with only mild weakness in the intrinsic hand muscle on right side. AR 672–73, 676, 681–82, 692.

Dong's treatment notes, referenced by the ALJ, weigh against the factors of supportability and consistency established in C.F.R. § 404.1527(c). The ALJ appropriately found that Dong's opinion was not consistent with the medical record as a whole, and therefore, appropriately discounted his limitation findings. *See* 20 C.F.R. 404.1527(c)(4). As such, this Court finds no error in the weight the ALJ assigned Dong's opinion.

As to Partoll, in his June 10, 2015, SSA medical source statement, he opined that Armstrong is capable of performing only low stress jobs. AR 386. In his opinion, Armstrong was limited to sedentary work, lifting ten pounds occasionally, lifting and carrying small items, and standing/walking no more than two hours in an eight-hour day. *Id.* However, he qualified that finding by stating that Armstrong is only capable of work on a part-time basis in a competitive setting. *Id.* Partoll concluded that Armstrong's symptoms markedly impaired his daily activities. AR 387.

The ALJ afforded little weight to Partoll's opinion because of its overall lack of consistency with the record. First, the ALJ noted that much of Partoll's medical source statement is blank and that he is "unable to offer an opinion on many questions" on the form. AR 21; *see, e.g.*, *Kelly*, 133 F.3d at 589 (reasoning that a treating physician's opinion is entitled to controlling weight if it is *well supported* by medically acceptable techniques). Moreover, the ALJ noted that Armstrong's physical exams were largely normal, AR 21, and showed that Armstrong was able

to perform daily activities without any marked limitation. *See id.* Indeed, in his function report, Armstrong stated that he could drive, shop, and take care of finances. AR 217. Therefore, this Court concludes that the ALJ did not error in finding that Partoll's opinion was inconsistent with other substantial evidence in the record as a whole, and provided good reason for discounting Partoll's opinion. *See* 20 C.F.R. § 404.1527(c)(2)

### B. Substantial Evidence Supports the ALJ's Limitation Findings and RFC

Armstrong argues that the ALJ discounted the opinions of his treating mental health providers, Richmond and Law, without providing good reason to do so, and that substantial evidence of record supports the minimal mental health limitations the ALJ incorporated into Armstrong's RFC. ECF No. 12 at 22. Central to Armstrong's argument is that Richmond and Law are mental health specialists and entitled to controlling weight, and that the ALJ failed to mention or factor their specialization in weighing their opinions. *Id.* at 28. "[O]pinions of specialists on issues within their areas of expertise are 'generally' entitled to more weight than the opinions of non-specialists." *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) (quoting 20 C.F.R. §§ 404.1527(d)(5)); *see also* 416.927(d)(5). The Eighth Circuit has "held, however, that this rule does not apply where the opinion of the specialist is controverted by substantial evidence or is otherwise discredited." *Prosch*, 201 F.3d at 1013; *see also Riley v. Shalala*, 18 F.3d 619, 622–23 (8th Cir.1994)).

As to Richmond, the ALJ gave his opinion that Armstrong suffered from marked impairments and would miss four work days a month no weight because it was contradicted by other medical evidence of record. AR 21. Specifically, the ALJ noted that other evidence of record, namely state examiners Fingar and Phibbs' opinions, which showed that Armstrong "has good mental status exams and reflect no more than mild limitations in activities of daily living;

13

social functioning; concentration, persistence, or pace." AR 21. Crucially an "ALJ [is] not required to believe the opinion of [a provider] when, on balance, the medical evidence convinced him otherwise." *Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997). Here, although the ALJ did not mention that Richmond was a specialist, he provided good reason for the weight he afforded Richmond's opinion, and identified how Richmond's opinion was contradicted by the other evidence of record. *See Riley*, 18 F.3d at 622–23. Accordingly, this Court will not disturb the weight the ALJ assigned Richmond's opinion.

As to Law, Armstrong similarly argues that the ALJ did not provide good reason for giving little weight to Law's opinion and failed to mention Law's specialization. ECF No. 12 at 23. Here, the ALJ found that based on Armstrong's normal mental status exams there was no basis for Law's opinion that Armstrong suffered marked or moderate limitations or could not work. AR 21; *see, e.g.*, AR 327–75, 528–619. The ALJ gave Law's opinion little weight because it was inconsistent with the medical evidence as a whole and with the opinions of the state agency consultants, Fingar and Phibbs. AR 21. In addition, the ALJ noted that Law expressed an opinion that Armstrong was unable to work due, in part, to physical impairments and related pain that as a mental health provider he was not qualified to comment on. *Id.* Again, the general rule regarding specialist weight "does not apply where the opinion of the specialist is controverted by substantial evidence or is otherwise discredited." *Prosch*, 201 F.3d at 1013. Here, that the ALJ explained how Law's opinion was contradicted by other medical evidence of record, and articulated how Law offered medical analysis on matters outside of his area of specialization and competence is sufficient to show that Law's opinion is both controverted and "otherwise discredited." *Id.*

Armstrong also argues that the ALJ erred in formulating his RFC because the ALJ failed to find more than minimal mental heatlh limitations. *See* ECF No. 12 at 22. "[A] claimant's [RFC] is a medical question" that requires "[s]ome medical evidence" in support. *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). Here, the ALJ opined that Armstrong's daily activities in the record belied his claim that his mental health impairments caused "a disabling level of limitation . . . ." AR 20. The ALJ noted that Armstrong's mental status exams were largely normal. *Id.* The ALJ articulated the weight given to both the evidence of record and Armstrong's providers, specifically, giving significant weight to the neutral medical examiner's review of the record and testimony in fashioning Armstrong's RFC, and incorporated the credible evidence of record in Armstrong's RFC. *Id.*

The record shows that the ALJ's RFC determination included, at minimum, some medical evidence. Although the ALJ must not "succumb to the temptation to play doctor and make their own medical findings," *Pate-Fires v. Asutre*, 564 F.3d 935, 947 (8th Cir. 2009), in this case, Armstrong does not argue that the ALJ went beyond the presented evidence to make independent factual findings. This Court's review of the ALJ's factual determination is deferential, and it neither re-weighs the evidence, reviews the factual record *de novo*, *see Flynn*, 107 F.3d at 620, nor reverses when an ALJ's decision falls within a reasonable "zone of choice." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Because the ALJ's RFC determination relied on a sufficient examination of the record, the Court concludes that substantial evidence exists to support the ALJ's RFC determination. *See id.*

## V. CONCLUSION

If the ALJ's decision is supported by substantial evidence on the record, this Court cannot reverse simply because "substantial evidence exists in the record that would have

supported a contrary outcome…or because we would have decided the case differently." *Roberts*, 222 F.3d at 468. Here, substantial evidence supports the ALJ's findings and weighing of the medical opinions. Accordingly, this Court must affirm the ALJ's decision denying Armstrong's application for DIB, and the Commissioner's motion for summary judgment must be granted.

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Armstrong's motion for summary judgment (ECF No. 11) is **DENIED**;

2. The Commissioner's motion for summary judgment (ECF No. 14) is **GRANTED**;

3. The Commissioner's decision is **AFFIRMED** and the case **DISMISSED WITH PREJUDICE**. **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: July 24, 2018               *s/Franklin L. Noel*
                                   FRANKLIN L. NOEL
                                   United States Magistrate Judge